UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAVOUNT PETERSON, | : | |
| | : | Civ. No. 21-8716 (KM) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| ROBERT CHETIRKIN, et al, | : | |
| Respondents. | : | |

**KEVIN MCNULTY, U.S.D.J.**

I.  **INTRODUCTION**

Pro se petitioner Lavount Peterson, a state prisoner incarcerated at East Jersey State Prison in Rahway, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. DE 1. The State has moved to dismiss the petition as untimely. DE 11. For the reasons below, the motion is granted, Peterson's petition is dismissed as untimely, and no certificate of appealability shall issue.

II. **BACKGROUND**

In June 1998, Peterson was convicted of, among other charges, first-degree murder and related weapons offenses, arising from his stabbing of a friend and neighbor seven times with a kitchen knife. DE 11-5 (judgment); DE 11-6 at 2 (*State v. Peterson*, No. A-6938-97T4 (App. Div. June 21, 2000)). He was sentenced to an aggregate term of life imprisonment with a 30-year period of parole ineligibility. *Id.* On June 21, 2000, the Superior Court of New Jersey, Appellate Division, affirmed. *Id*. Certification was denied on October 19, 2000. *State v. Peterson*, 165 N.J. 605, 762 A.2d 219 (2000).

On November 22, 2000, Peterson filed a pro se petition for post-conviction relief ("PCR") in state court. DE 11-8. He argued, *inter alia*, that his counsel was ineffective for failing to present evidence of diminished capacity. DE 11-9 at 11–18. That petition was dismissed without prejudice on May 20, 2003 to allow designated PCR counsel time to locate and review Peterson's trial file. DE 11-11 at 1 (printout from "New Jersey Promis/Gavel" stating: "P.C.R. MOTION DISMISS W/O PREJ. DEF. MAY REFILE TRIAL FILE MISPLACED").

After more than three years passed with no apparent progress, Peterson evidently wrote a letter to the presiding judge requesting a status update. The record before me includes a letter dated May 26, 2004, from Superior Court Judge John F. Malone to Peterson, which states, in relevant part:

> This letter is in response to your recent correspondence with regard to your Post Conviction Relief Petition. After the Petition was filed, counsel was assigned by the office of the Public Defender. Your attorney, Frank Krack, advised the court that he was investigating the case and attempting to locate the file. Subsequently, Mr. Krack notified the court that he was having difficulty obtaining the complete file. Since Mr. Krack felt that without the file he would not be able to present the PCR Petition for the court's consideration, the Petition was dismissed. The dismissal was, however, without prejudice to your right to have the Petition re-filed at a later date. This was done to allow more time for investigation by Mr. Krack.

DE 14 at 9. Seven months later, in December 2004, Peterson received the following correspondence from an investigator in the office of the New Jersey Public Defender: "I have been unable to l[o]cate your file in the Union Public Defender's office. They have placed a trace on the file to see if it was returned from the Appellate Division." DE 14 at 10.

Another 2.5 years passed. Peterson then, on July 30, 2007—1,532 days after his PCR petition had been dismissed—re-filed a pro se PCR petition without the benefit of his case file[1]

---

[1] As noted below, Peterson eventually received a hearing on his PCR petition during which the judge and PCR counsel noted that the file had not been located. DE 11-19 at 6.

(DE 11-12); on February 19, 2008, he filed a pro se supporting brief (DE 11-13); and on July 31, 2009, PCR counsel submitted a letter brief in support of the petition (DE 11-14). On August 6, 2010, Judge Malone denied Peterson's PCR petition without an evidentiary hearing. DE 11-15. Peterson filed a notice of appeal six months later, on February 3, 2011. DE 11-16. On October 29, 2012, the Appellate Division affirmed in part and remanded for an evidentiary hearing on the issue of trial counsel's failure to pursue a diminished capacity defense. *State v. Peterson*, No. A-2758-10T4, 2012 WL 5356633 (N.J. Super. Ct. App. Div. Oct. 29, 2012). Certification was denied on May 9, 2013. *State v. Peterson*, 213 N.J. 537, 65 A.3d 263 (2013).

An evidentiary hearing was held on four dates between September 12, 2014, and January 9, 2015. DE 11-19 at 6. On October 20, 2015, the PCR judge denied the petition. *Id*. The judge noted in his opinion that "[t]he Court, the PCR attorneys, and the witnesses did not have the benefit of the trial file [at the hearing] because the Public Defender's Office was unable to locate it after an extensive search." *Id.* On November 1, 2018—1,108 days later—Peterson filed a notice of appeal. DE 11-20. On September 23, 2020, the Appellate Division affirmed (*State v. Peterson*, No. A-1001-18T4, 2020 WL 5648543, at *1 (N.J. Super. Ct. App. Div. Sept. 23, 2020)); certification was denied on January 22, 2021 (*State v. Peterson*, 245 N.J. 57, 243 A.3d 937 (2021)).

Peterson filed this habeas petition on April 12, 2021, arguing evidentiary errors and ineffective assistance of counsel. DE 1 at 9–11. On June 9, 2022, the State moved to dismiss, arguing that the petition is untimely and equitable tolling is not warranted. DE 11-1 at 11–12. Peterson responded on July 7, 2022. DE 14. He argues that the time to file his petition was tolled for the 1,532 days between the dismissal and refiling of his PCR petition because the dismissal was without prejudice, which, he argues, "provided equitable tolling to avoid the unfairness of

3

preventing [Peterson] from asserting his claims on a later date after his file could be located." DE 14 at 4. As to the 1,108 days between the PCR court's denial of the PCR petition without a hearing and his appeal, Peterson argues that equitable tolling is appropriate because state law allows out-of-time appeals where "the defendant—personally and within time—requested his trial counsel or the Public Defendant's Office to file an appeal on his behalf." DE 14 at 6. The State did not reply to Peterson's arguments. Accordingly, the motion is fully submitted and ready for decision. For the reasons below, the motion is granted; the petition is dismissed as untimely; and no certificate of appealability shall issue.

## III. DISCUSSION

### A. The Petition Is Untimely

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), established a one-year statute of limitations for habeas corpus petitions brought pursuant to 28 U.S.C. § 2254, which begins to run from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" includes the 90-day period in which a petitioner could have but did not file a petition for certiorari with the United States

Supreme Court. *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013); *see also* 28 U.S.C. § 2244(d)(1)(A).

The limitations period is tolled during the pendency of properly filed applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003) ("[T]o fall within the AEDPA tolling provision, the petition for state post-conviction review must have been both pending and 'properly filed.'") (citation omitted). An application for post-conviction relief is considered "pending" during the period between a lower state court's denial of the petition and the deadline for a petitioner to timely appeal that decision, regardless of whether the appeal was actually filed. *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000). It is not, however, "pending" during the period between "the expiration of time under state law in which a state prisoner could have timely appealed (but did not) a trial court's denial of a PCR petition," and "a state prisoner's submission of a motion for leave to file a PCR appeal 'as within time.'" *Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 264 (3d Cir. 2022). "Section 2244(d)(2)'s tolling mechanism looks forward, not backward, and a state court's acceptance of an appeal 'as within time' does not rewind AEDPA's one-year clock." *Id.*; *see also Georges v. Bartkowski*, No. CV 10-6300, 2021 WL 4902021, at *3 (D.N.J. Oct. 21, 2021) ("[T]hat a late notice of appeal is accepted *nunc pro tunc* does nothing to correct the fact that no state court PCR petition was 'pending' during the intervening time and thus does not grant the petition statutory tolling which otherwise does not apply."). Further, "the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one-year state of limitations under 28 U.S.C. § 2244(d)(2)." *Stokes v. D.A. of the County of Phila.*, 247 F.3d 539, 542 (3d Cir. 2001).

5

Here, Peterson's petition for certification on direct review was denied on October 19, 2000. DE 11-7. Thus, his conviction became final for purposes of the one-year limitations period 90 days later, on January 17, 2001, when his time in which to petition the United States Supreme Court for certiorari expired. *Ross*, 712 F.3d at 798; 28 U.S.C. § 2244(d)(1)(A). This is the date on which the one-year limitation period would have begun to run; however, before his conviction became final, on November 22, 2000, Peterson filed a PCR petition. DE 11-8. The filing of that petition tolled the limitation period until the PCR court dismissed the petition without prejudice on May 20, 2003. DE 11-11; 28 U.S.C. § 2244(d)(2).

Approximately 1,532 days later, on July 30, 2007, Peterson re-filed his PCR petition (DE 11-12); it was denied on August 6, 2010.[2] DE 11-15. Peterson's notice of appeal was due by September 20, 2010. *See Georges v. Bartkowski*, No. CV 10-6300, 2021 WL 4902021, at *2 (D.N.J. Oct. 21, 2021) ("In New Jersey, a notice of appeal for the denial of a PCR petition is due within forty-five days of the date on which the PCR petition was denied.") (citing N.J. Ct. R. 2:4-1). However, he did not file it until February 3, 2011. DE 11-16. Accordingly, the limitation period ran for 136 days, i.e., from September 20, 2010 (when the notice of appeal should have been filed) until February 3, 2011 (when it was filed). *See Martin*, 23 F.4th at 264 ("While it is true that a state court's acceptance of an untimely appeal breathes new life into the state PCR proceeding . . . it does not resuscitate the PCR petition for the period in which it was, for all

---

[2] The State contends that the time was not tolled for these 1,532 days, because there were no applications for PCR or other collateral review pending before the state courts. DE 11-1 (arguing, without citation, that "since nothing was pending before the state courts at this point, time began to run again"). There is some contrary authority. *See, e.g.*, *Banks v. Pierce*, No. 17-2961, 2018 WL 1446402, at *3 (D.N.J. Mar. 23, 2018) (assuming, without deciding, that "the habeas statute of limitations remained tolled after the PCR court's . . . dismissal without prejudice, [because] the court's order did not address the merits of the PCR petition and was not a final, appealable order"). I need not decide the issue here because, as explained above, Peterson's petition is untimely even without counting these 1,532 days.

practical purposes, defunct."); *Georges*, 2021 WL 4902021, at *2 ("where a New Jersey prisoner fails to file a timely notice of appeal under New Jersey's forty-five (45) day rule, his petition remains pending for the forty-five (45) days during which he could have filed a timely appeal from the denial of his PCR petition, but is not 'pending' for tolling purposes between the expiration of the forty-five day period and his filing of late notice of appeal") (citing *Evans v. Chavis*, 546 U.S. 189, 197 (2006); *Swartz v. Meyers*, 204 F.3d 417, 420–24, 423 n.6 (3d Cir. 2000); *Thompson v. Admin. N.J. State Prison*, 701 F. App'x 118, 121–123 (3d Cir. 2017)).

The period was tolled again until the PCR court denied post-conviction relief on October 20, 2015. DE 11-19. A notice of appeal should have been filed by December 4, 2015; however, Peterson did not file until nearly three years later, on November 1, 2018. DE 11-20. Accordingly, as no state court proceedings were pending from December 4, 2015, to November 1, 2018, a period of 1,063 days, the limitations period was not statutorily tolled. *See Martin*, 23 F.4th at 271 (3d Cir. 2022) ("Section 2244(d)(2)'s 'pending' requirement looks forward, not backward. This sensible construction of the statute comports with the fact that, at the expiration of time in which to file a timely PCR appeal, a petitioner's PCR proceedings have concluded."); *see id.* at 272 ("We hold that Martin's petition was not 'pending' for the nearly eight years between June 14, 2004 (the last day that he could have timely appealed, but did not, the trial court's denial of his PCR petition) and April 6, 2012 (the day on which Martin moved to file his PCR appeal 'as within time')."). The time was again tolled while Peterson's case was pending on appeal. Certification was denied on January 22, 2021, (*Peterson*, 243 A.3d 937), after which the time began to run again, for 83 days, until Peterson filed this petition on April 12, 2021. DE 1.

Taking the view most favorable to the defendant, at least 1,282 of the days that elapsed between the date Peterson's conviction became final, on January 17, 2001, and the date he filed

7

his habeas petition, April 12, 2021, are not subject to statutory tolling. That total of 1282 days consists of the 136 days between when Peterson's notice of appeal of the denial of his PCR petition without a hearing should have been filed and when it was filed, the 1,063 days between when Peterson's notice of appeal of the denial of his PCR petition after a hearing was filed and when it should have been filed, and the 83 days between when certification was denied and Peterson filed this habeas petition.[3] That period of 1282 days adds up to over three years, and is well beyond the one-year limitation period set forth in the AEDPA. Therefore, absent equitable tolling (discussed below), Peterson's petition must be dismissed as untimely.

### B. Peterson Has Not Established a Valid Basis for Equitable Tolling

The statute of limitations is non-jurisdictional and thus subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645–649 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Jenkins*, 705 F.3d at 89. District courts "should be sparing in their use of the doctrine" and limit its application only to the "rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) (internal citations omitted).

To satisfy the diligence requirement, "reasonable diligence" is required, but "not maximum, extreme, or exceptional diligence." *Ross v. Varano,* 712 F.3d 784, 799 (3d Cir. 2013). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." *LaCava*, 398 F.3d at 277. "A determination of whether a petitioner has exercised reasonable

---

[3] As noted above, I have not counted the additional 1,532 days between when Peterson's PCR petition was dismissed without prejudice and when he refiled it (which the State contends should also be counted against him).

diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross*, 712 F.3d at 799–800 (internal citations omitted).

Extraordinary circumstances may be found if the petitioner: (1) has been actively misled, (2) has in some extraordinary way been prevented from asserting his rights, or (3) has timely asserted his rights in the wrong forum. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (citation omitted). The requisite degree of extraordinariness turns on "'how severe an obstacle it is for the prisoner endeavoring to comply with the AEDPA's limitations period.'" *Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011) (citing *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)). "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Id.* (citations omitted); *see also Chang-Cruz v. Hendricks*, No. 12-7167, 2013 WL 5966420, at *7–8 (D.N.J. Nov. 7, 2013) (petitioner's argument that he or she lacks legal knowledge, "at least standing alone, cannot support equitable tolling of the AEDPA statute of limitations").

Applying these standards, I find that Peterson is not entitled to equitable tolling. At the outset, there is no basis for equitable tolling—and Peterson does not make any argument in support of it—of (1) the 136 days between when Peterson's notice of appeal of the denial of his PCR petition without a hearing should have been filed and when it was filed, and (2) the 83 days between when certification was denied and Peterson filed this habeas petition. Accordingly, these 219 days must be included in the one-year limitations period.

There is also no basis for equitably tolling the 1,063 days between when Peterson's notice of appeal of the denial of his PCR petition should have been filed and when it was filed. Peterson's only argument is that state law forgives untimely appeals if "the defendant— personally and within time—requested his trial counsel or the Public Defendant's Office to file an appeal on his behalf." DE 14 at 5–6 (citing 100 N.J.L.J. 1208 (1977) (Notice to the Appellate Bar stating: "The Supreme Court [of New Jersey] has directed the Appellate Division to relax Rule 2:4-4(a) in favor of allowing an out-of-time appeal nunc pro tunc on behalf of an indigent criminal defendant in any case where it satisfactorily appears that the defendant, personally, within time, requested trial counsel or the Public Defender's Office to file an appeal."). This argument is without merit.

As an initial matter, it is not clear that Peterson should have benefited from the state rule that he cites; he does not actually state that *he* "personally and within time" requested his counsel to file an appeal. DE 14 at 5–6. Assuming that he does intend such an assertion, however, he submits no evidence in support of that assertion, e.g., no correspondence with counsel or the Public Defender's Office, and no affidavit, declaration, or certification from counsel or a representative of the Public Defender's Office stating that the request was made, let alone that it was made within time. Further, on its face, the notice of appeal that was filed does not include a "within time" request (DE 11-20), and the Appellate Division decision denying the appeal does not indicate that a "within time" request was made or granted (DE 11-21). Instead, the court addressed the merits, which it found lacking, directly. *Id*.

Second, even assuming the Appellate Division received and granted such a request, Peterson's entitlement to the benefit of a state law allowing untimely appeals does not establish his entitlement to equitable tolling of his federal habeas petition; he must still demonstrate both

that he pursued his rights diligently and that extraordinary circumstances stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Peterson makes no effort to do this. He does not allege, for example, that counsel misled him by stating that the appeal had been filed. *See Lara v. Chetirkin*, No. CV 21-14076, 2022 WL 970289, at *5 (D.N.J. Mar. 31, 2022) ("Petitioner relied on PCR counsel to timely file his PCR appeal, but he has not established that counsel actively misled him or prevented him from timely asserting his habeas rights by either filing a timely pro se notice of PCR appeal to toll the limitations period or by filing a habeas petition and seeking a stay and abeyance pending his PCR proceedings . . . . Thus, Petitioner was not prevented from asserting his habeas rights in an extraordinary way."); *Barge v. Adm'r of N.J. State Prison*, No. 18-12033, 2022 WL 770132, at *3 (D.N.J. Mar. 14, 2022) ("Petitioner has not presented the Court with any evidence that there was anything other than ordinary delays and circumstances involved. He does not allege, for example, attorney malfeasance by an affirmative misrepresentation that an appeal had been filed. He has not met his burden of showing extraordinary circumstances.").

Peterson does not describe the efforts, if any, he made to determine the status of his request or to file a notice of appeal himself during the 1,063 days that passed between when his PCR petition was dismissed and when counsel from the Public Defender's Office filed the notice of appeal. *See Martin*, 23 F.4th at 273–74 ("We proffer no bright line rule as to how long is too long to be considered 'reasonable diligence' in following up on whether a state PCR appeal was filed. However, in Martin's case, waiting nine months to first inquire as to the status of his appeal—after only having been 'promised,' at the conclusion of his hearing, that an appeal would be filed and never having reached out to any source, his then-counsel or otherwise, during those nine months to confirm that an appeal in fact had been filed—suggests that he was sleeping

11

on his rights.'") (cleaned up); *Lara*, 2022 WL 970289, at *5 ("Even if a court-appointed attorney's failure to timely file an appeal due to an overwhelming caseload and staff shortage is an extraordinary circumstance establishing the first element of equitable tolling, Petitioner must still establish his own diligence in pursuing his rights. In equitable tolling cases where petitioners were found to have exercised reasonable diligence, those petitioners took steps to contact their attorneys or the courts for assistance before the limitations period expired."); *Parsley v. Davis*, No. 20-16397, 2022 WL 1184794, at *7 (D.N.J. Apr. 20, 2022) ("Petitioner provides no explanation for the 12-day delay after the Appellate Division denied his PCR appeal other than '[t]he P.D.'s office took some 32-days' to file a certification petition. This conclusory argument is insufficient for the Court to conclude that Petitioner was reasonably diligent or that extraordinary circumstances stood in his way.") (citations omitted).

Peterson does not describe when, how, or to whom he allegedly requested that an appeal be filed; he does not describe when, how, to whom, or how often he followed up on the alleged request; he does not describe what, if any, efforts he made to file a notice of appeal himself; and he does not provide any supporting documentation indicating efforts to file the notice or determine the status of his request over the approximately three years leading up to his counsel's filing of the notice of appeal. *See Martin*, 23 F.4th at 273–74 (3d Cir. 2022) (no equitable tolling where petitioner did not inquire with his PCR counsel, office of public defender, the court, or any other entity into status of his PCR appeal until nearly nine months after his PCR counsel purportedly made "solemn promise" to file notice of appeal, and petitioner waited about four months to file PCR appeal "as within time" after finding out that appeal was never submitted); *Barge*, 2022 WL 770132, at *3 (D.N.J. Mar. 14, 2022) (no equitable tolling where "Petitioner provides no information as to what was happening between his May 11, 2015 request and the

12

September 24, 2015 filing. For example, did he contact the Public Defender's Office to find out if the appeal had been filed? If so, when, and how often? Did the Public Defender's Office have any other communication with Petitioner regarding his appeal? Nothing in Petitioner's submissions suggest he made any attempt over the roughly four months 'to confirm with his then-counsel, the Office of the Public Defender, the court, or any other entity that an appeal had been filed.'") (quoting *Martin*, 23 F. 4th at 274); *Parsley*, 2022 WL 1184794, at *7 (D.N.J. Apr. 20, 2022) ("The Court will not equitably toll the pre-appeal period" where "Petitioner failed to take further action once it became apparent that no notice of appeal had been filed and that it would likely be several more months before the Public Defender's Office would file one"). On this record, I see no evidence that Peterson was faced with an extraordinary circumstance or that he diligently pursued his rights. Accordingly, the alleged failure of counsel to file a timely notice of appeal does not warrant equitable tolling.

Finally, to the extent Peterson argues that the missing case file was an extraordinary circumstance warranting equitable tolling of this 1,063-day period, this argument also fails. The period in question occurred long after efforts to locate the missing file had been exhausted and it was clear that the file was unlikely to be recovered. Indeed, before this time, Peterson re-filed, pro se, his PCR petition (DE 11-12) and a supporting brief (DE 11-13); his counsel submitted a letter brief in support of the petition (DE 11-14); his counsel filed a notice of appeal after the petition was dismissed without a hearing (DE 11-16); and Peterson and his trial counsel testified at the PCR hearing (11-19 at 6)—all without the benefit of the file. There is no reason, then, that the file would have been necessary for Peterson to timely file a simple notice of appeal from the PCR court's decision denying his petition. *See Thompson v. Att'y Gen. of N.J.*, No. 18-5115, 2022 WL 16552792, at *6 (D.N.J. Oct. 31, 2022) (no extraordinary circumstances sufficient to

13

justify equitable tolling where "Thompson was aware of the allegedly missing briefs and trial transcripts . . . long before the clock even began to run on the limitations period").

Further, Peterson describes no intervening event or change in circumstances between the due date and the actual filing date of the notice of appeal. Peterson eventually did file the notice of appeal without the missing file, demonstrating that the file was not in fact necessary. Under these circumstances, Peterson has not demonstrated the requisite level of diligence required for equitable tolling. *See id.* (insufficient showing of diligence where petitioner filed his petition "two months after the deadline, with no evidence of any intervening event that changed his situation," which "demonstrates that he was able to file a comprehensive petition without the missing materials").

In similar contexts, many cases have held that where a petitioner argues that legal documents are necessary to prepare his petition, yet he prepares and files the petition without ever having the benefit of the missing documents, he has not established a meritorious basis for equitable tolling. [4] The same holds true here. Peterson's counsel ultimately filed the notice of

---

[4] *See Satterfield v. Johnson*, 434 F.3d 185, 196 (3d. Cir. 2006) ("Where a petitioner is ultimately able to file his habeas petition, with or without having received replacement materials, the deprivation of legal documents does not justify equitable tolling."); *Cooper v. Ferguson*, No. 19-4030, 2021 WL 39630, at *4 (E.D. Pa. Jan. 5, 2021) (no finding of extraordinary circumstances where petitioner "continues to allege that documents were destroyed or never provided to him," however, "the supposed unavailability of these materials . . . did not prevent him from filing a federal habeas petition because he has filed the instant petition without apparently having these items.") (quotations and citations omitted); *Tomlin v. Britton*, No. CV 09-848, 2018 WL 9813189, at *1 (E.D. Pa. July 27, 2018) ("Even assuming prison officials' loss of a portion of Tomlin's legal materials—including what he claims was a completed federal habeas petition—two and a half months before the federal filing deadline constituted an extraordinary circumstance, Tomlin has not made a sufficient showing of diligence. Although Tomlin describes in detail his efforts to obtain the return of his missing legal materials through the prison grievance process, he does not describe what, if any, steps he took to prepare a new federal habeas petition during the year the grievance process was ongoing . . . . Notably, Tomlin was ultimately able to file a new federal habeas petition without the benefit of his missing materials."); *Gantt v. United States*, No. 11-6191, 2014 WL 6471478, at *4 (D.N.J. Nov. 18, 2014) ("Nor is it clear that Petitioner was actually prevented [by the unavailability of legal materials] from filing his Petition due to any 'extraordinary circumstances,' as he did in fact file his Petition one month after the statute of limitations had run. . . . Had he been exercising reasonable diligence, Petitioner could have filed a timely Petition based on the information he had in his

appeal without the benefit of the case file and Peterson demonstrated no change in circumstances—not only between when the notice of appeal was due and when it was filed, but also in the 15 years between when he learned the file was missing (as early as May 2003, when the first PCR petition was dismissed without prejudice) and when the untimely notice of appeal was actually filed (in November 2018). On this record, Peterson has not established any extraordinary circumstance warranting equitable tolling. Further, even if the missing file amounted to an extraordinary circumstance, Peterson does not provide evidence—or attempt to argue—that he diligently pursued his rights during this time period. Accordingly, there is no basis for equitably tolling the 1,063 days between when Peterson should have filed the notice of appeal of the denial of his PCR petition and when he filed it.

In sum, Peterson filed his habeas petition 20 years after his conviction became final, during which at least 1,282 days (and, possibly, some or all of an additional 1,532 days) of untolled time elapsed. This is well beyond the one-year limitations period. Accordingly, as Peterson's petition must be dismissed as untimely, the State's motion to dismiss is granted.

### C. Certificate of Appealability

AEDPA provides that an appeal may not be taken from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability stating that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

---

possession."); *Smith v. Adams*, No. 02-6124, 2005 WL 1335236, at *7 (E.D. Cal. June 1, 2005), *aff'd*, 176 F. App'x 830 (9th Cir. 2006) ("According to Petitioner, his legal materials had been lost for over a year and a half (since December 20, 1997) [and] he had been attempting to recover his property since that time. In September of 1998, he was informed that his legal materials were lost or destroyed and could not be located. It was at this point that Petitioner should have begun work on redrafting his petition.").

constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. I will deny a certificate of appealability because jurists of reason would not find it debatable that this petition is untimely.

### D. CONCLUSION

For the reasons stated above, the State's motion to dismiss (DE 11) is granted, Peterson's petition (DE 1) is dismissed as untimely, and a certificate of appealability is denied. An appropriate order follows.

DATED:  November 28, 2022

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge