UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAVOUNT PETERSON, | : |
| Petitioner, | : Civ. No. 21-8716 (KM) |
| v. | : **OPINION** |
| ROBERT CHETIRKIN, et al., | : |
| Respondents. | : |

Pro se petitioner Lavount Peterson, a state prisoner incarcerated at East Jersey State Prison in Rahway, New Jersey, moves pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's opinion and order dismissing as untimely his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* DE 1 (petition); DE 15 (opinion), DE 16 (order); DE 19 (motion for reconsideration). For the reasons below, I will construe the motion as one under Rule 60(b) and deny it. A certificate of appealability shall not issue.

**I.    BACKGROUND**

I set forth the facts relevant to the timeliness of Peterson's habeas petition in my November 22 opinion as follows:

> In June 1998, Peterson was convicted of, among other charges, first-degree murder and related weapons offenses, arising from his stabbing of a friend and neighbor seven times with a kitchen knife. DE 11-5 (judgment); DE 11-6 at 2 (State v. Peterson, No. A-6938-97T4 (App. Div. June 21, 2000)). He was sentenced to an aggregate term of life imprisonment with a 30-year period of parole ineligibility. *Id*. On June 21, 2000, the Superior Court of New Jersey, Appellate Division, affirmed. *Id*. Certification was denied on October 19, 2000. *State v. Peterson*, 165 N.J. 605, 762 A.2d 219 (2000).
>
> On November 22, 2000, Peterson filed a pro se petition for post-conviction relief ("PCR") in state court. DE 11-8. He argued, *inter alia*, that his counsel was ineffective for failing to present evidence of diminished capacity. DE 11-9 at 11–18. That petition was dismissed without prejudice on May 20, 2003 to allow designated PCR counsel time to locate and review Peterson's trial file. DE 11-11

at 1 (printout from "New Jersey Promis/Gavel" stating: "P.C.R. MOTION DISMISS W/O PREJ. DEF. MAY REFILE TRIAL FILE MISPLACED").

After more than three years passed with no apparent progress, Peterson evidently wrote a letter to the presiding judge requesting a status update. The record before me includes a letter dated May 26, 2004, from Superior Court Judge John F. Malone to Peterson, which states, in relevant part:

> This letter is in response to your recent correspondence with regard to your Post Conviction Relief Petition. After the Petition was filed, counsel was assigned by the office of the Public Defender. Your attorney, Frank Krack, advised the court that he was investigating the case and attempting to locate the file. Subsequently, Mr. Krack notified the court that he was having difficulty obtaining the complete file. Since Mr. Krack felt that without the file he would not be able to present the PCR Petition for the court's consideration, the Petition was dismissed. The dismissal was, however, without prejudice to your right to have the Petition re-filed at a later date. This was done to allow more time for investigation by Mr. Krack.

DE 14 at 9. Seven months later, in December 2004, Peterson received the following correspondence from an investigator in the office of the New Jersey Public Defender: "I have been unable to l[o]cate your file in the Union Public Defender's office. They have placed a trace on the file to see if it was returned from the Appellate Division." DE 14 at 10.

Another 2.5 years passed. Peterson then, on July 30, 2007—1532 days after his PCR petition had been dismissed—re-filed a pro se PCR petition without the benefit of his case file.

(DE 11-12); on February 19, 2008, he filed a pro se supporting brief (DE 11-13); and on July 31, 2009, PCR counsel submitted a letter brief in support of the petition (DE 11-14). On August 6, 2010, Judge Malone denied Peterson's PCR petition without an evidentiary hearing. DE 11-15. Peterson filed a notice of appeal six months later, on February 3, 2011. DE 11-16. On October 29, 2012, the Appellate Division affirmed in part and remanded for an evidentiary hearing on the issue of trial counsel's failure to pursue a diminished capacity defense. *State v. Peterson*, No. A-2758-10T4, 2012 WL 5356633 (N.J. Super. Ct. App. Div. Oct. 29, 2012). Certification was denied on May 9, 2013. *State v. Peterson*, 213 N.J. 537, 65 A.3d 263 (2013).

An evidentiary hearing was held on four dates between September 12, 2014, and January 9, 2015. DE 11-19 at 6. On October 20, 2015, the PCR judge denied the petition. *Id*. The judge noted in his opinion that "[t]he Court, the PCR attorneys, and the witnesses did not have the benefit of the trial file [at the hearing] because the Public Defender's Office was unable to locate it after an extensive search." *Id*.

> On November 1, 2018—1108 days later—Peterson filed a notice of appeal. DE 11-20. On September 23, 2020, the Appellate Division affirmed (*State v. Peterson*, No. A-1001-18T4, 2020 WL 5648543, at *1 (N.J. Super. Ct. App. Div. Sept. 23, 2020)); certification was denied on January 22, 2021 (*State v. Peterson*, 245 N.J. 57, 243 A.3d 937 (2021)).

DE 15 at 2–3 (footnote omitted).

Peterson filed his habeas petition on April 12, 2021 (DE 1 at 9–11), which was about 23 years after his conviction and about 21 years after his direct appeal was resolved. He argued that the time to file his petition was tolled for the 1532 days between the dismissal and refiling of his PCR petition because the dismissal was without prejudice, which, he argued, "provided equitable tolling to avoid the unfairness of preventing [Peterson] from asserting his claims on a later date after his file could be located." DE 14 at 4. As to the 1108 days between the PCR court's denial of the PCR petition without a hearing and his appeal, Peterson argued that equitable tolling was appropriate because state law allows out-of-time appeals where "the defendant—personally and within time—requested his trial counsel or the Public Defendant's Office to file an appeal on his behalf." DE 14 at 6.

On November 28, 2022, I dismissed the petition as untimely, finding that Peterson failed to establish a basis for equitable tolling. DE 15, 16. As to the 1532 days between when Peterson's conviction became final for purposes of the one-year limitation period (on January 17, 2001 (DE 15 at 6)) and when he refiled his PCR petition (on July 30, 2007 (DE 11-12)), the State argued that the time was not tolled because there were no applications for PCR or other collateral review pending before the state courts. DE 11-1 (arguing, without citation, that "since nothing was pending before the state courts at this point, time began to run again"). I noted, however, that there is some contrary authority treating the PCR petition as, in effect, pending until finally decided. *See, e.g.*, *Banks v. Pierce*, No. 17-2961, 2018 WL 1446402, at *3 (D.N.J. Mar. 23, 2018) (assuming, without deciding, that "the habeas statute of limitations remained tolled after

3

the PCR court's . . . dismissal without prejudice, [because] the court's order did not address the merits of the PCR petition and was not a final, appealable order"), and concluded that I need not decide the issue because Peterson's petition was untimely even without counting these 1532 days. DE 15 at 6 n.2.

Disregarding for convenience the 1532 days discussed above, and taking the view most favorable to Peterson, I found that there were 1282 days of untolled time that elapsed between the date Peterson's conviction became final (January 17, 2001 (DE 15 at 6)) and the date he filed his habeas petition (April 12, 2021 (DE 1 at 9–11)). DE 15 at 7–8. This time consists of (1) 136 days between when Peterson's notice of appeal of the denial of his PCR petition without a hearing should have been filed and when it was filed, (2) 1063 days between when Peterson's notice of appeal of the denial of his PCR petition after a hearing was filed and when it should have been filed, and (3) 83 days between when certification was denied and Peterson filed this habeas petition. DE 15 at 8.

Applying the relevant standards, I found that Peterson had not argued for, and there was no basis for, equitable tolling of (1) the 136 days between when Peterson's notice of appeal of the denial of his PCR petition without a hearing should have been filed and when it was filed, and (2) the 83 days between when certification was denied and Peterson filed this habeas petition. I therefore counted those 219 days toward the one-year limitations period. DE 15 at 9.

As to the 1,063 days between when Peterson's notice of appeal of the denial of his PCR petition should have been filed (December 4, 2015 (DE 15 at 7)) and when it was filed (November 1, 2018 (DE 11-20)), I found that Peterson was also not entitled to equitable tolling. As relevant here, I explained as follows:

> Peterson's only argument is that state law forgives untimely appeals if "the defendant—personally and within time—requested his trial counsel or the Public

4

Defendant's Office to file an appeal on his behalf." DE 14 at 5–6 (citing 100 N.J.L.J. 1208 (1977) (Notice to the Appellate Bar stating: "The Supreme Court [of New Jersey] has directed the Appellate Division to relax Rule 2:4-4(a) in favor of allowing an out-of-time appeal nunc pro tunc on behalf of an indigent criminal defendant in any case where it satisfactorily appears that the defendant, personally, within time, requested trial counsel or the Public Defender's Office to file an appeal."). This argument is without merit.

As an initial matter, it is not clear that Peterson should have benefited from the state rule that he cites; he does not actually state that *he* "personally and within time" requested his counsel to file an appeal. DE 14 at 5–6. Assuming that he does intend such an assertion, however, he submits no evidence in support of that assertion, e.g., no correspondence with counsel or the Public Defender's Office, and no affidavit, declaration, or certification from counsel or a representative of the Public Defender's Office stating that the request was made, let alone that it was made within time. Further, on its face, the notice of appeal that was filed does not include a "within time" request (DE 11-20), and the Appellate Division decision denying the appeal does not indicate that a "within time" request was made or granted (DE 11-21). Instead, the court addressed the merits, which it found lacking, directly. *Id*.

Second, even assuming the Appellate Division received and granted such a request, Peterson's entitlement to the benefit of a state law allowing untimely appeals does not establish his entitlement to equitable tolling of his federal habeas petition; he must still demonstrate both that he pursued his rights diligently and that extraordinary circumstances stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Peterson makes no effort to do this. He does not allege, for example, that counsel misled him by stating that the appeal had been filed. *See Lara v. Chetirkin*, No. CV 21-14076, 2022 WL 970289, at *5 (D.N.J. Mar. 31, 2022) ("Petitioner relied on PCR counsel to timely file his PCR appeal, but he has not established that counsel actively misled him or prevented him from timely asserting his habeas rights by either filing a timely pro se notice of PCR appeal to toll the limitations period or by filing a habeas petition and seeking a stay and abeyance pending his PCR proceedings . . . . Thus, Petitioner was not prevented from asserting his habeas rights in an extraordinary way."); *Barge v. Adm'r of N.J. State Prison*, No. 18-12033, 2022 WL 770132, at *3 (D.N.J. Mar. 14, 2022) ("Petitioner has not presented the Court with any evidence that there was anything other than ordinary delays and circumstances involved. He does not allege, for example, attorney malfeasance by an affirmative misrepresentation that an appeal had been filed. He has not met his burden of showing extraordinary circumstances.").

Peterson does not describe the efforts, if any, he made to determine the status of his request or to file a notice of appeal himself during the 1,063 days that passed between when his PCR petition was dismissed and when counsel from the Public Defender's Office filed the notice of appeal. [ *Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 273–74 (3d Cir. 2022)] ("We proffer no bright line rule as to how

5

long is too long to be considered 'reasonable diligence' in following up on whether a state PCR appeal was filed. However, in Martin's case, waiting nine months to first inquire as to the status of his appeal—after only having been 'promised,' at the conclusion of his hearing, that an appeal would be filed and never having reached out to any source, his then-counsel or otherwise, during those nine months to confirm that an appeal in fact had been filed—suggests that he was sleeping on his rights.'") (cleaned up); [*Lara v. Chetirkin*, No. CV 21-14076, 2022 WL 970289, at *5] (D.N.J. Mar. 31, 2022) ("Even if a court-appointed attorney's failure to timely file an appeal due to an overwhelming caseload and staff shortage is an extraordinary circumstance establishing the first element of equitable tolling, Petitioner must still establish his own diligence in pursuing his rights. In equitable tolling cases where petitioners were found to have exercised reasonable diligence, those petitioners took steps to contact their attorneys or the courts for assistance before the limitations period expired."); *Parsley v. Davis*, No. 20-16397, 2022 WL 1184794, at *7 (D.N.J. Apr. 20, 2022) ("Petitioner provides no explanation for the 12-day delay after the Appellate Division denied his PCR appeal other than '[t]he P.D.'s office took some 32-days' to file a certification petition. This conclusory argument is insufficient for the Court to conclude that Petitioner was reasonably diligent or that extraordinary circumstances stood in his way.") (citations omitted).

Peterson does not describe when, how, or to whom he allegedly requested that an appeal be filed; he does not describe when, how, to whom, or how often he followed up on the alleged request; he does not describe what, if any, efforts he made to file a notice of appeal himself; and he does not provide any supporting documentation indicating efforts to file the notice or determine the status of his request over the approximately three years leading up to his counsel's filing of the notice of appeal. *See Martin*, 23 F.4th at 273–74 (3d Cir. 2022) (no equitable tolling where petitioner did not inquire with his PCR counsel, office of public defender, the court, or any other entity into status of his PCR appeal until nearly nine months after his PCR counsel purportedly made "solemn promise" to file notice of appeal, and petitioner waited about four months to file PCR appeal "as within time" after finding out that appeal was never submitted); [*Barge v. Adm'r of N.J. State Prison*, No. 18-12033, 2022 WL 770132, at *3 (D.N.J. Mar. 14, 2022)] (no equitable tolling where "Petitioner provides no information as to what was happening between his May 11, 2015 request and the September 24, 2015 filing. For example, did he contact the Public Defender's Office to find out if the appeal had been filed? If so, when, and how often? Did the Public Defender's Office have any other communication with Petitioner regarding his appeal? Nothing in Petitioner's submissions suggest he made any attempt over the roughly four months 'to confirm with his then-counsel, the Office of the Public Defender, the court, or any other entity that an appeal had been filed.'") (quoting *Martin*, 23 F. 4th at 274); [*Parsley v. Davis*, No. 20-16397, 2022 WL 1184794, at *7 (D.N.J. Apr. 20, 2022)] ("The Court will not equitably toll the pre-appeal period" where "Petitioner failed to take further action once it became apparent that no notice of appeal had been filed and that it would likely be several more months before the Public Defender's Office would file one"). On this record, I see no evidence that

> Peterson was faced with an extraordinary circumstance or that he diligently pursued his rights. Accordingly, the alleged failure of counsel to file a timely notice of appeal does not warrant equitable tolling.

DE 15 at 10–13 (footnote and citations omitted). I also found that Peterson's missing case file did not provide a basis for equitable tolling. *Id.* at 13–15.

## II. DISCUSSION

### A. Jurisdiction

I dismissed Peterson's § 2254 petition as untimely on November 28, 2022. DE 15, 16. On December 27, 2022, Peterson filed a timely[1] notice of appeal. DE 17. About three weeks later, on January 18, 2023, he filed this Rule 59(e) motion, which is dated January 3, 2023. DE 19.

Even if the Rule 59 motion were meritorious, I could not grant it, because Peterson filed it more than 28 days after the entry of judgment,[2] and while an appeal was (and still is) pending in the Third Circuit. *See* Fed. R. App. P. 4(a)(4)(A); *see also*, *e.g.*, *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 761 (3d Cir. 2018) ("In federal court, the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (cleaned up); *Schlafly v. Eagle F.*, No. 17-2522, 2020 WL 2790519, at *6 (D.N.J. May 30, 2020) (collecting authorities and noting that "courts within this district routinely deny untimely Rule 59(e) . . . motions" and that "the Third Circuit has upheld the denial of untimely Rule 59(e) . . .

---

[1] A notice of appeal must be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). Peterson filed his notice of appeal on December 27, 2022—29 days after the entry of the order dismissing the petition. DE 17.

[2] A Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment," Fed. R. Civ. P. 59(e), and a district court lacks discretion to extend that time, *see* Fed. R. Civ. P. 6(b)(2). Peterson's motion is dated January 3, 2023, and was filed on January 18, 2023. Even giving Peterson the benefit of the date on his motion rather than the filing date, it is still untimely—36 days after entry of the November 28, 2022 order.

7

motions"). I also lack jurisdiction, and in any event would not exercise my discretion, to issue an indicative ruling under Fed. R. Civ. P. 62.1 because the Rule 59(e) motion is untimely. *See* Fed. R. Civ. P. 62.1 (district court can issue indicative ruling "[i]f a *timely* [Rule 59(e)] motion is made for relief") (emphasis added).

That does not, however, end the inquiry, because I may construe an untimely Rule 59(e) motion as a Rule 60(b) motion.³ So construed, the motion would not necessarily be untimely, because Rule 60(b) motions need only be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). But here, too, the notice of appeal divests me of authority to grant a Rule 60(b) motion; I can only defer it, deny it, or issue an indicative ruling, because it was filed while a notice of appeal was pending and not within 28 days of the opinion and order from which it seeks relief. *See Kull v. Kutztown Univ. of Pa.*, 543 F. App'x 244, 248 (3d Cir. 2013) ("A Rule 60(b) motion preserves jurisdiction in the District Court only if filed no later than 28 days after judgment is entered."); *see also* Fed. R. Civ. P. 62.1 2009 Advisory Committee Notes ("After an appeal has been docketed and while it remains pending, the district court cannot grant a Rule 60(b) motion without a remand. But it can entertain the motion and deny it, defer consideration, or state that it would grant the motion if the court of appeals remands for that purpose[.]").

Because, in theory, I could deny Peterson's motion or issue an indicative ruling in contemplation of a remand, *see id.*, I will review the merits of the motion in aid of a comprehensive resolution.

---

³ *See, e.g.*, *Walker v. Astrue*, 593 F.3d 274, 279 (3d Cir. 2010) (noting that Rule 59(e) and 60(b) motions are "substantively interchangeable," and "an untimely Rule 59(e) motion should be construed as a Rule 60(b) motion").

8

### B. Applicable Law

In relevant part, Rule 60(b) permits courts, on motion, to relieve parties from "a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence, (3) fraud, or . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (b)(2), (b)(3), (b)(6). The purpose of Rule 60(b) is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Walsh v. Krantz*, 423 F. App'x 177, 179 (3d Cir. 2011) (per curiam) (quoting *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)).

The provisions arguably relevant here are Rules 60(b)(1), (b)(2), and (b)(6), which pertain, respectively, to excusable neglect, newly discovered evidence, and any other reason justifying relief. Fed. R. Civ. P. 60(b)(1), (2), & (6). To establish excusable neglect under Rule 60(b)(1), a movant must show both good faith and a reasonable basis for not acting within the specified period. *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 237 (D.N.J. 1997). To establish relief based on newly discovered evidence under Rule 60(b)(2), a movant must put forth evidence that, with reasonable diligence, could not have been discovered in time. *United States v. Martin*, No. 98-178, 2020 WL 2848191, at *2 (E.D. Pa. June 2, 2020).

Rule 60(b)(6) is "a catch-all provision extending beyond the listed circumstances to 'any other reason that justifies relief.' Despite the open-ended nature of the provision, a district court may only grant relief under Rule 60(b)(6) in extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Satterfield v. Dist. Att'y Philadelphia*, 872 F.3d 152, 158 (3d Cir. 2017) (cleaned up). "This is a difficult standard to meet, and such circumstances will rarely occur in the habeas context." *Id.* (cleaned up); *Trenton Metro. Area*

*Loc. of Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, No. 06-2319, 2008 WL 11510621, at *1 (D.N.J. Dec. 30, 2008) ("Though the Court is afforded broad discretion to deny or grant relief under Rule 60(b) in light of the particular circumstances, such relief is traditionally considered extraordinary and is only sparingly afforded.").

### C. Analysis

Peterson argues that I should reconsider my November 2022 opinion and order. For the reasons stated above, I still see no substantial argument for exclusion of (1) the 136 days between when Peterson's notice of appeal of the denial of his PCR petition without a hearing should have been filed and when it was filed, and (2) the 83 days between when certification was denied and Peterson filed this habeas petition. I therefore continue to count those 219 days toward the one-year limitations period. DE 15 at 9. That implies that the motion is untimely if an additional 146 days (365 minus 219) have run. (As noted above, I do not reach the issue of the 1532 days during which the PCR petition was dismissed without prejudice while the parties searched for the lost file.)

Peterson focuses here on an additional period of 1063 days which, he says, should have been equitably tolled. That period may be represented as follows:

```
                10/20/2015:  remainder of PCR finally denied, after evidentiary hearings, on
                             remand
                12/4/2015:   deadline to appeal that decision
    ↑
 1063 days
    ↓
11/1/2018:      notice of appeal actually filed
```

This period, of course, is far longer than the additional 146 days required to render the habeas petition untimely. Peterson argues that this entire period should be equitably tolled, however. The heart of his argument is that he did not learn his PCR had been denied until some

10

two years after the fact, on October 20, 2017, and did not receive a copy of the opinion until April 2018:

> The PCR court denied my PCR petition on October 20, 2015 but did not send a copy of its opinion neither to my PCR counsel, the Office of the Public Defender, or me. Or, if the PCR court did send a copy of its opinion to my PCR counsel and the Office of the Public Defender, said copies got lost and they never received them. Either way, I was not informed that my PCR petition[] ha[d] been denied until October 20th of 2017.
>
> Between 2015 and 2017, I monthly called my PCR attorney and the [OPD] to find out the status of my PCR petition, but the answer was always that it was still pending and that I will be advised once they get a decision.
>
> I then ha[d] my sister contact the PCR court and she found out on my behalf that my PCR petition had been denied in October of 2015. So I wr[o]te to the PCR court requesting a copy of its PCR decision in my case and it was sent to me.
>
> I immediately sought help from another inmate and filed a pro se notice of appeal and a motion for permission to file it as within time. In said motion I informed the Appellate Division of the fact that the PCR decision from the PCR court denying my PCR petition and was not provided to me until April of 2018. The [OPD] joined my pro se motion and filed another notice of appeal that was dismissed as duplicate. The Appellate Division granted my as within time motion.

DE 19-1 at 3–4 (citations omitted).[4]

In its most schematic form, Peterson's reconsideration motion offers new facts supplementing the above time line as follows:

---

[4] Peterson argued in his opposition to respondents' motion to dismiss that "the main reason Petitioner's PCR appeal could not have been timely filed is because . . . both the Government and the [OPD] could not locate Petitioner's file therefore preventing appellate counsel from reviewing the same to prepare a proper notice of appeal identifying all legal issues." DE 14 at 6. Peterson asserts in his motion for reconsideration that "due to [his own] lack of clarity," I misunderstood his argument regarding the alleged basis for equitably tolling this 1063 days. DE 19-1 at 4. The lost "file" to which he was referring, he says, was not the original trial file, but "the opinion of the PCR court." DE 19-1 at 4. Be that as it may, in addition to my finding that the missing case file did not warrant equitable tolling, I *also* found that the "failure of counsel to file a timely notice of appeal [did] not warrant equitable tolling." DE 15 at 13. Accordingly, to the extent I misunderstood Peterson's argument to include an entitlement to relief on the basis of the missing case file, this only means I addressed an argument Peterson did not intend to make *in addition* to the argument he did intend to make. Accordingly, this "misunderstanding" does not provide a basis for the me to reconsider my November 2022 opinion and order.

11

|  | 10/20/2015: | remainder of PCR denied, after evidentiary hearings, on remand |
|---|---|---|
|  | 12/4/2015: | deadline to appeal that ruling |

↑

|  | 10/20/2017: | Peterson learns of the October 2015 denial of PCR |
|---|---|---|
| 1063 days | 4/2018: | Peterson obtains a copy of the court's decision |

↓

|  | 11/1/2018: | notice of appeal actually filed |
|---|---|---|

The documents newly submitted by Peterson on his motion for reconsideration include, inter alia, the following:

- A November 2017[5] letter to the OPD detailing a history of his assigned counsel's non-responsiveness over the years and stating, inter alia, "[O]n October 20, 2017, by email, . . . my sister[] informed me that Judge Peim Stuart denied my PCR petition on October 19, 2015"[6]; "at the very least Mr. Krack should have notified me of Judge Peim's decision and put in a Notice of Appeal on my behalf"; and "I would like to appeal Judge Peim's decision." DE 19-2 at 16–17.

- A March 23, 2018 letter to a Union County Superior Court judge stating: "My family contacted the court on October 20, 2017, and was informed that a decision was made October 19, 2015"; "On November 31, 2017 I contacted [the OPD] and explained [] that I was not given a copy of the opinion[,] nor was I informed that a decision was made"; "As of this day I still have not been notified if a decision was made in my case"; "I am asking for your assistance in obtaining a copy of the opinion in my case." DE 19-2 at 18.

- June 19, 2018 notice of appeal, accompanied by a signed certification in support of a motion to proceed as within time wherein Peterson states: "It was not until April 11, 2018, that I found out that my petition for PCR had been denied." DE 19-2 at 26.[7]

---

[5]   This document is dated "November 2017" but does not specify an exact date. DE 19-2 at 15.

[6]   The Superior Court's opinion and order is dated October 19, 2015 (DE 11-19 at 15), and was filed on October 20, 2015 (*id.* at 1).

[7]   The notice of appeal in the record up until this point—the notice I relied upon in my November 2022 opinion—was filed by respondents. It is a notice of appeal prepared by the OPD and marked "Filed, Clerk of the Appellate Division, November 01, 2018, A-001001-18." DE 11-20. In contrast, the notice of appeal submitted by Peterson indicates it was prepared by Peterson, is dated June 19, 2018, and is not marked filed. DE 19-2 at 19-20. If it was, in fact, filed on the date Peterson claims—which is not apparent—135 days would be removed from the 1063 days at issue. This would not be material to my analysis, however, as I would still have found that Peterson did not act with the necessary diligence to determine the status of his PCR petition and file a notice of appeal in the nearly three years between

12

To begin with, the evidence attached to the motion for reconsideration is not new. Although the documents pre-date his habeas petition by several years, Peterson did not provide them to the Court in support of his opposition to respondents' motion to dismiss. DE 14. He proffers the following explanation:

> [T]he majority of the documents and receipts attached [to the motion for reconsideration] were not in my possession and ever since Respondents[] filed their motion to dismiss I have been trying to obtain from the Department of Corrections and the other inmates who helped me in the past copies of the letter they typed for me and the mailing receipts. And for these reasons I was unable to present these documents and receipt any earlier even if I wanted to.

DE 19-1 at 5. The documents are years old, and Peterson has not provided a plausible excuse as to why he possesses them now but could not have obtained them in time for inclusion in his opposition. Peterson did not advise the Court in his opposition that he was working to obtain copies of these documents; nor did he describe the information contained in the documents. These routine difficulties in organizing or laying one's hands on documents do not satisfy his burden on a Rule 60 motion to demonstrate that he could not have brought this information to the court's attention in his opposition brief. *Martin*, 2020 WL 2848191, at *2.

---

October 20, 2015 (when the PCR court denied the petition), and June 18, 2018 (when Peterson's pro se notice of appeal was allegedly filed).

    I also note that Peterson's various certifications are not consistent; in the pro se notice of appeal that he claims to have filed in the Appellate Division in June 2018, it appears he included, as described above, a certification (DE 19-2 at 26) in support of his motion to proceed as within time (DE 19-2 at 23) stating that "[i]t was not until April 11, 2018, *that I found out* that my petition for PCR had been denied" (DE 19-2 at 26). This is contrary to his statements to this Court stating that he found out about the decision in October 2017, but that a *written copy* "was not provided to me until April of 2018." DE 19-1 at 23. His certification to the Appellate Division is also contrary to a letter he wrote to a superior court judge stating: "My family contacted the court on October 20, 2017, and was informed that a decision was made October 19, 2015." DE 19-2 at 18; *see also* DE 19-2 at 16 (Peterson's letter to the OPD wherein he states: "[O]n October 20, 2017, by email, . . . my sister[] informed me that Judge Peim Stuart denied my PCR petition on October 19, 2015."). One might question whether the Appellate Division would have granted his motion to proceed as within time had the court known he (1) may have provided inaccurate information in his certification in support of his motion and (2) was informed of the decision denying his PCR petition approximately eight months prior to filing his notice of appeal and not the approximately two months he wrote in his certification.

13

At any rate, these new documents and contentions do not suffice to support equitable tolling. The PCR court rendered its final decision and denied the petition on October 20, 2015. DE 11-19. None of the documents attached to Peterson's motion corroborate his belated, nonspecific assertion that he now recalls contacting his PCR attorney and the OPD monthly between 2015 and 2017 to find out the status of his petition, only to be told it was still pending. DE 19-2 at 3. To the contrary, his detailed letter to the OPD states only that he was never informed, not that he reached out and was misinformed. DE 19-2 at 15. In his letter to the superior court judge and his certification in support of his motion to proceed as within time, Peterson similarly states that he was never informed of the decision, not that he was misled. DE 19-2 at 18, 26. Having offered no reasonable explanation for his change of story, he is estopped from denying these admissions.

And even if all this were true, I would be constrained to find that Peterson did not act with the diligence required for equitable tolling. It appears his sister was readily able to determine that the petition had been denied with a phone call to the court. DE 19-2 at 16. On any version of the events, the relevant information was known to his sister by October 20, 2017, and was equally available to him as of that date. In one of his submissions, he admits that she actually emailed that information to him the same day. *See* n.7, *supra*.

Having learned of the PCR court's decision, he did not exercise due diligence in obtaining a copy of it. He complains that he was not furnished a copy, but the documents he provides demonstrate that, after learning of the decision in October 2017, he waited over 5 months, until March 23, 2018, before he even asked for a copy. DE 19-2 at 18 (Peterson's letter to the superior court requesting a copy of the decision). The court responded less than three weeks later, on April 11, 2018, enclosing a copy of the opinion and order. DE 19-2 at 29.

Peterson alleges that he was waiting for a copy of the PCR decision to file his notice of appeal (DE 19-1 at 3). Still, even after having obtained a copy, he did not rush to file a notice of appeal. Instead, he waited another 7 months, from April 2018 until November 1, 2018, to file his notice of appeal. DE 11-20.[8]

Peterson has not established excusable neglect, due diligence, or newly discovered evidence. The information he asks me to consider now—including the alleged monthly phone calls and other communication with the OPD and superior court—assuming it is true, would necessarily have been known to him when he filed his opposition to respondents' motion to dismiss. Thus, he has not demonstrated both good faith and a reasonable basis for not acting within the specified period. *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. at 237.

Nor has Peterson demonstrated that the underlying circumstances were so exceptional as to justify relief from a final order under Rule 60(b). For the reasons expressed above, the information contained in Peterson's motion would not have changed the outcome, because it would not support the years of equitable tolling that would be required to bring his habeas petition within the one-year limitations period. Thus, Peterson has not established extraordinary circumstances that, without the relief requested, would result in injustice or cause an "extreme and unexpected hardship." *Satterfield*, 872 F.3d at 158.

---

[8] *But see* n.7, *supra*. Now, on reconsideration, Peterson proffers a second notice of appeal which he says he filed on his own, in addition to the one file by the OPD. This *pro se* notice, which bears no file stamp or other indicia of actual filing, is dated several months earlier, June 18, 2018. I note also, as I did in the original opinion, that state doctrines excusing or vacating deadlines will not serve to restart the one-year habeas limitations period if it has already run. *See Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 264 (3d Cir. 2022) ("While it is true that a state court's acceptance of an untimely appeal breathes new life into the state PCR proceeding . . . it does not resuscitate the PCR petition for the period in which it was, for all practical purposes, defunct."). At any rate, as noted in the opinion, this 4 ½ month discrepancy would not change the result.

For these reasons, I will deny Peterson's motion for reconsideration. Further, a certificate of appealability will not issue because reasonable jurists would not debate whether the motion states a valid claim of the denial of a constitutional right or the propriety of this Court's procedural rulings with respect to Peterson's claims. *See* 28 U.S.C. § 2253(c)(2) (providing that a certificate of appealability will issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate order follows.

### III.   CONCLUSION

For the foregoing reasons, Peterson's motion for reconsideration pursuant to Fed. R. Civ. P. 59(e) (DE 19), which the Court construes as a motion pursuant to Fed. R. Civ. P. 60(b), is denied and no certificate of appealability shall issue.  An appropriate order follows.

DATED:  April 3, 2023

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge